Herbert Weissblum, and Julius Thannhauser, Cohn, Riemer & Pollack, Boston, Mass., for plaintiff.

Alan S. Barkin, Simons & Marcus, Boston, Mass., for defendant.

**WRIGHT ENGINEERING COMPANY, Plaintiff,**

v.

**DI-AN CONTROLS, INC., Defendant.**

**Civ. A. No. 67-832.**

United States District Court
D. Massachusetts.

July 16, 1969.

## OPINION

CAFFREY, District Judge.

This is a civil action in the nature of an action of contract. Plaintiff is a corporation incorporated under the laws of the State of California with a principal place of business in Pasadena. Defendant is a corporation incorporated under the laws of the Commonwealth of Massachusetts with a principal place of business in Boston. Plaintiff's claim is for a sum in excess of $10,000 and jurisdiction of this court is based on the provisions of 28 U.S.C.A. § 1332(a) (1). The parties waived a jury trial and the case was tried to the Court on the basis of

the complaint, the defendant's answer, the counterclaim contained in defendant's answer, and plaintiff's answer to defendant's counterclaim. After trial I find and rule as follows:

Plaintiff is engaged in the business of furnishing engineering services and serving as a sales representative for manufacturers of electronic systems. Defendant is in the business of manufacturing and selling electronic systems and parts and components thereof. On April 17, 1959, the parties entered into a written contract under the terms of which plaintiff was retained by defendant as an exclusive manufacturer's representative in certain Western states which included at various times during the life of the contract all or part of California, Arizona, Nevada and New Mexico. The contract, which is appended as Exhibit A to the complaint, provided that it was automatically renewable every year unless one of the parties gave written notice of cancellation to the other party at least thirty days prior to the anniversary date thereof. Under the contract defendant agreed to pay to plaintiff certain commissions as compensation for plaintiff's services, the amount of the commission to be determined by the product sold and the dollar value of each order, as specified in a schedule of commission rates appearing on page 5 of the contract. The commissions were due on the 15th day of the month following that in which the defendant received the payment upon which such commissions were based.

The commissions were payable on all orders "booked" by plaintiff during the term of the agreement and for a period of ninety days following its termination. The contract defined "orders booked" as "all orders which are received and accepted by" the defendant. The contract also stated "An order shall be considered booked on the date received by (defendant) and the commission shall be paid on all orders received within the period specified in this paragraph, even though said order is accepted by (defendant) subsequent to said period."

The plaintiff began representing defendant and promoting the sale of its products immediately after the execution of the contract and continued to do so for several years without any incident of a litigious nature. From time to time amendments were made to the contract, concerning either commission rates or territories to be covered by plaintiff. The amendment of April 1960 (Pl. Ex. 7) revised the commission rate. The amendment of September 1960 (Pl. Ex. 8) added Northern California to the territory to be serviced by plaintiff, effective November 13, 1960. The amendment of May 21, 1962 (Pl. Ex. 9) eliminated Arizona from the territory in which plaintiff was to represent defendant. The amendment of February 25, 1964 (Pl. Ex. 10) restored Arizona to the territory serviced by plaintiff and also added New Mexico to plaintiff's service area. It is significant that this latter amendment, which was written by a representative of defendant, referred to the contract as "your contract of April 17, 1959." This is a telling admission by defendant as to the true date of the contract which, during the trial, defendant claimed was not April 17, 1959, the date contended by plaintiff, but rather June 11, 1959. I find that plaintiff's contention that the contract was made on April 17, 1959 is factual.

Business relations continued along between the parties, during the course of which at various times the principal officers of the two corporations, Mr. Jack Mott of plaintiff and Mr. Robert Kodis of defendant, discussed various possible changes and improvements in their business relationship, the possibility of defendant purchasing plaintiff, changes in the types of services being rendered by plaintiff to defendant, etc. Nothing specific resulted from these discussions.

On April 12, 1965, plaintiff received a letter amounting to a notice of termination of the contract (Pl. Ex. 12) which was dated April 7, 1965. Despite this letter plaintiff continued to perform the same services for defendant as it had been doing for several years and contin-

ued to receive commissions pursuant to the terms of the contract as amended by the amendments set forth above. I find that despite this so-called "letter of termination" the parties continued to do business pursuant to the terms of their contract and that defendant in so doing waived and abandoned its notice of termination.

In February 1966, Manuel Kaufman, Director of Marketing for defendant, presented a proposal to plaintiff for a radically changed method of continuing to do business. This was rejected by Mott, President of plaintiff. Thereafter, several letters were exchanged which culminated, on March 17, 1966, with plaintiff sending a telegram to Mr. Goldman, vice-president of defendant, giving thirty days notice of the termination of the contract pursuant to the terms thereof. In a letter written March 21, 1966, four days after receipt of this telegram, Kaufman, who I specifically find had apparent authority sufficient to bind defendant, acknowledged receipt of the telegram and agreed to pay commissions on sales made within ninety days of the termination date of April 17, 1966.

No useful purpose is to be served by repeating and spelling out in detail the substance of all the documents introduced in evidence at the trial. I am persuaded and I find that plaintiff performed its obligations under the contract and that plaintiff's Exhibit 24-A accurately sets forth those sales serviced by plaintiff on which commissions are due to plaintiff and have not been paid by defendant within the period terminating ninety days after April 17, 1966. I find that non-payment thereof is a breach of contract by defendant and consequently I find that plaintiff is entitled to recover from defendant on account of earned and unpaid commissions $41,067-47. In so finding I reject as not credible the testimony of defendant's President, Kodis, which sought to explain away the entries in Exhibit 24-A. I likewise find that defendant has failed to sustain its burden of proof with re-

gard to the affirmative allegations of its counterclaim which I find wholly without basis in fact.

Accordingly, judgment will enter for the plaintiff in the amount of $41,067-47, with interest from February 13, 1967, and costs, on its complaint, and for plaintiff on defendant's counterclaim.